[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Jackson,* Slip Opinion No. 2019-Ohio-4203.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4203

CINCINNATI BAR ASSOCIATION *v*. JACKSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Jackson, Slip Opinion No. 2019-Ohio-4203.*]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to keep client-trust-account records and failing to deliver to a third person funds the third person is entitled to receive—Conditionally stayed six-month suspension.*

(No. 2019-0501—Submitted May 21, 2019—Decided October 16, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-034.

_____

**Per Curiam.**

{¶ 1} Respondent, Kory Akin Jackson, of Cincinnati, Ohio, Attorney Registration No. 0072572, was admitted to the practice of law in Ohio in 2000.

{¶ 2} In 2017 and 2018, relator, Cincinnati Bar Association, filed two separate attorney-discipline complaints against Jackson with the Board of Professional Conduct. In the first complaint, which was filed in August 2017,

relator alleged that Jackson had violated several of the Rules of Professional Conduct in his representation of an incarcerated client. The parties entered into a consent-to-discipline agreement, and the board recommended that we accept the agreement and sanction Jackson with a public reprimand. We rejected that recommendation, however, and remanded the cause to the board "for further proceedings, including consideration of payment of full restitution and a more appropriate sanction based on this court's precedent." *Cincinnati Bar Assn. v. Jackson*, 153 Ohio St.3d 1479, 2018-Ohio-3777, 108 N.E.3d 78.

**{¶ 3}** In July 2018, prior to our remand order, relator filed a second complaint against Jackson alleging that he had violated several of the Rules of Professional Conduct in the course of handling two personal-injury suits. After we issued our remand order, the board consolidated the two cases. The parties later stipulated to certain facts, some of the charged misconduct, and aggravating and mitigating factors, and the matter proceeded to a hearing before a three-member panel of the board. After the hearing, the panel unanimously dismissed some of the charges, found that Jackson had committed some of the alleged violations, and recommended that Jackson receive a conditionally stayed six-month suspension. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Neither party has objected to the board's report and recommendations. For the reasons that follow, we accept the board's findings and recommended sanction.

**Misconduct**

*The Williams matter*

**{¶ 4}** In 2002, Danny Williams pleaded guilty to multiple felonies and was sentenced to a term in prison. In 2009, Patricia Williams, Danny's mother, retained Jackson to represent Danny while he was incarcerated. Patricia signed a written fee agreement and paid Jackson a $2,500 retainer to review Danny's case file and transcripts, file a notice of appeal, and discuss options for the appeal. After

reviewing the file, Jackson verbally informed Patricia that there were no grounds for appeal and that Danny's only possibility for relief was through the filing of a state-court habeas corpus petition. To this end, Patricia paid Jackson an additional $3,500 to perform more research regarding habeas relief. Jackson did not deposit either fee he received from Patricia into his client trust account and did not maintain detailed records of disbursement of those funds after the representation was terminated. Jackson never filed a pleading on Danny's behalf, and he could not produce to relator any documentation relating to Danny's representation. In November 2017, Jackson returned Patricia's payment of $3,500, and in October 2018, following our remand order regarding this matter, he returned her payment of $2,500.

{¶ 5} Based on this conduct, the board determined that Jackson violated Prof.Cond.R. 1.15(a) (a lawyer must keep records of client-trust-account funds and preserve the records for seven years after the termination of the representation or disbursement of the funds, whichever comes first) and 1.15(c) (a lawyer must deposit legal fees and expenses that have been paid in advance into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred). We agree with the board's findings of misconduct.

*The Allen/Folden matters*

{¶ 6} In 2015, Jackson represented Wanda Allen and Brian Folden in separate personal-injury cases, and he entered into contingent-fee agreements with each of them. A Cincinnati chiropractic clinic treated Allen and Folden for their injuries, and Jackson was on notice that the clinic was to be paid out of their respective settlements. After Jackson settled the two cases, he received settlement checks for each and deposited them into his client trust account. Sometime after the settlements, Jackson received a call from the clinic's office manager, Donald Powers, who asked whether Allen's and Folden's cases had been settled and whether the clinic had been paid. Jackson responded that the cases had settled and

that he believed that the clinic had been paid. Jackson sent the clinic a copy of the check that had been made out to the clinic for Allen's treatment, which Jackson regarded as proof that the clinic had been paid. Jackson was unable to furnish evidence establishing that the clinic had been paid for Folden's treatment. Powers agreed to check the clinic's records to verify that it had been paid and Jackson agreed to verify that the check for Allen's treatment had cleared.

{¶ 7} The clinic later filed a grievance against Jackson. After relator filed its disciplinary complaint regarding these matters, the clinic received payments for Allen's and Folden's treatments in the amounts agreed upon with Jackson. Jackson did not document the distribution of settlement funds in the Allen and Folden matters by preparing closing statements.

{¶ 8} During the investigation of the clinic's grievance, Jackson was unable to prove that he had maintained professional-liability insurance while representing Allen and Folden. Jackson could establish only that he had coverage during a portion of the period in question.

{¶ 9} Based on this conduct, the board determined that Jackson violated Prof.Cond.R. 1.4(c) (a lawyer must inform the client if the lawyer does not maintain professional-liability insurance), 1.5(c)(2) (a lawyer entitled to compensation under a contingent-fee agreement must prepare a closing statement to be signed by the lawyer and the client that details the calculation of the lawyer's compensation and any costs and expenses deducted from the judgment or settlement), and 1.15(d) (a lawyer must promptly notify a third person of funds received by the lawyer in which the third person has a lawful interest and must promptly deliver to the third person any funds the third person is entitled to receive). We agree with the board's findings of misconduct.

## Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

aggravating and mitigating factors prescribed by Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 11} As aggravating factors, the board found that Jackson had engaged in a pattern of misconduct and in multiple offenses by not preparing closing statements in the Allen and Folden matters. *See* Gov.Bar R. V(13)(B)(3) and (4). As mitigating factors, the board found that Jackson had no prior disciplinary record, made a full and free disclosure to the board and displayed a cooperative attitude throughout the proceedings, and presented evidence of good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). The board also credited Jackson for fully paying the fees owed to the clinic, for refunding all fees paid to him in the Williams matter, and for acquiring professional-liability insurance prior to the hearing for the purpose of covering potential claims that could arise regarding the time when he was without such insurance. *See* Gov.Bar R. V(13)(C)(3) (recognizing a timely, good-faith effort to make restitution or to rectify consequences of misconduct as a mitigating factor).

{¶ 12} In recommending its sanction, the board first addressed this court's remand order entered upon our rejection of the earlier consent-to-discipline agreement in the Williams matter. The board observed that because Jackson had, prior to his disciplinary hearing, refunded all fees paid by Williams's mother, he had "already complied with any potential sanction that would have included a refund of fees." It then turned to consider the caselaw, finding *Columbus Bar Assn. v. Keating*, 155 Ohio St.3d 347, 2018-Ohio-4730, 121 N.E.3d 341, and *Toledo Bar Assn. v. Gregory*, 132 Ohio St.3d 110, 2012-Ohio-2365, 969 N.E.2d 1182, most instructive.

{¶ 13} In *Keating*, we imposed a conditionally stayed six-month suspension on a lawyer who failed to sign a contingent-fee agreement, failed to pay a chiropractic clinic for its treatment of three clients in accord with agreed-upon terms, failed to maintain adequate records regarding his client trust account, failed

to inform existing clients about the lapse of his professional-liability insurance, and failed to inform new clients about the lack of such insurance. The only aggravating factor was that the lawyer had committed multiple offenses. Mitigating factors were that the lawyer had no prior disciplinary record, did not exhibit a dishonest or selfish motive, made restitution and modified his office-management practices, and was cooperative throughout the disciplinary process.

{¶ 14} In *Gregory*, we imposed a conditionally stayed six-month suspension on a lawyer who failed to promptly deposit client funds in a client trust account, failed to keep accurate records concerning the funds held for each client, failed to maintain records regarding the client trust account, and failed to perform and retain monthly reconciliations of the account. Aggravating factors were that the lawyer had engaged in a pattern of misconduct involving multiple offenses. Mitigating factors were that the lawyer had no prior disciplinary record, lacked a dishonest or selfish motive, did not inflict lasting harm on clients, made restitution, expressed remorse, and cooperated in the disciplinary process.

{¶ 15} Because we agree that these decisions establish the appropriate guideposts for imposing a sanction in this case, we accept the board's recommended sanction. Accordingly, we suspend Kory Akin Jackson from the practice of law for six months, all stayed on the conditions that (1) within 120 days of our disciplinary order, he complete three hours of continuing legal education ("CLE") in law-office management and three hours of CLE in client-trust-account management and (2) he commit no further misconduct. If Jackson fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Jackson.

Judgment accordingly.

KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., would not stay the suspension.

_____

Schuh & Goldberg, L.L.P, and Richard J. Goldberg; Aronoff, Rosen & Hunt, L.P.A., and Kevin L. Swick; Keating, Muething & Klekamp, P.L.L., and Richard L. Creighton Jr.; Kenneth E. Peller; and Edwin W. Patterson III, Bar Counsel, for relator.

Montgomery, Rennie & Johnson, L.P.A., and George D. Jonson; and Wendy R. Calaway Co., L.P.A., and Wendy R. Calaway, for respondent.

_____