[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Rauzan and Wagner,* Slip Opinion No. 2020-Ohio-355.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-355

MAHONING COUNTY BAR ASSOCIATION *v.* RAUZAN AND WAGNER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Rauzan and Wagner,* Slip Opinion No. 2020-Ohio-355.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Six-month suspension, fully stayed on condition (Rauzan)—Public reprimand (Wagner).*

(No. 2019-1374—Submitted November 13, 2019—Decided February 6, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-040.

_____

**Per Curiam.**

{¶ 1} Respondents, Andrew William Rauzan, Attorney Registration No. 0090084, and Carol Clemente Wagner, Attorney Registration No. 0039798, both of Struthers, Ohio, were admitted to the practice of law in Ohio in 2013 and 1988, respectively. During the time period relevant to this disciplinary proceeding,

Rauzan and Wagner shared office space but practiced as solo practitioners. During some of the relevant time period, Rauzan served as the chief of police for Campbell, Ohio.

{¶ 2} In July 2018, relator, Mahoning County Bar Association, charged Rauzan with violating the Rules of Professional Conduct based on his misdemeanor convictions for improperly accessing the Ohio Law Enforcement Gateway ("OHLEG") system during his service as police chief.[1] In a December 2018 first amended complaint, relator also charged Rauzan with commingling personal and client funds in his client trust account. And in a February 2019 second amended complaint, relator alleged that Rauzan committed professional misconduct while Rauzan and Wagner jointly represented clients in a personal-injury matter. Relator separately charged Wagner with misconduct relating to the personal-injury matter, and the Board of Professional Conduct consolidated the two cases.

{¶ 3} Rauzan and Wagner stipulated to some—but not all—of the charged misconduct, and the matter proceeded to a hearing before a three-member panel of the board. The panel found that respondents engaged in the stipulated misconduct, dismissed the remaining alleged rule violations, and recommended that we impose a conditionally stayed six-month suspension on Rauzan and publicly reprimand Wagner. The board issued a report adopting the panel's findings of misconduct and recommended sanctions, and no one objected to the board's report. Based on our review of the record, we accept the board's findings of misconduct and recommended sanctions.

**Misconduct**

*Rauzan's criminal conviction*

{¶ 4} In 2016, an investigator with the Ohio Attorney General discovered that Rauzan, while serving as police chief, had conducted searches on the OHLEG

---

1. The OHLEG system is a secure electronic information network that provides Ohio law-enforcement agencies with criminal-history data and other confidential records.

system that were not connected to any legitimate law-enforcement purpose. A special prosecutor later concluded that Rauzan had not engaged in any further inappropriate conduct—such as contacting the individuals for whom he had searched—and that the subjects of his searches had not been harmed by his actions. Therefore, although unauthorized access of OHLEG is a fifth-degree felony, R.C. 2913.04(I), the prosecutor decided to resolve the matter through a Crim.R. 11(F) plea agreement in which Rauzan agreed to plead guilty to lesser charges, resign as police chief, surrender his Ohio Peace Officer Training Academy ("OPOTA") certificate, and self-report his convictions to relator.

{¶ 5} In August 2017, the prosecutor filed a bill of information in the Mahoning County Court of Common Pleas charging Rauzan with four counts of attempted unauthorized use of property in violation of R.C. 2913.04(D) and 2923.02—all first-degree misdemeanors. Later that month, Rauzan pleaded guilty to those charges and the court sentenced him to one year of community control and fined him $1,000. Prior to his plea and sentencing, Rauzan had resigned as police chief and surrendered his OPOTA certificate, which—according to the parties' stipulations—permanently disqualified him from working in law enforcement.

{¶ 6} Based on this conduct, the parties stipulated and the board found that Rauzan violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness).

*Rauzan's trust-account violations*

{¶ 7} In October 2018, relator received notice that Rauzan had overdrawn his client trust account. After receiving subpoenaed records from Rauzan's bank, relator discovered that Rauzan had been commingling personal funds with client funds in the account and that he had been essentially using his trust account as an operating account for his law firm. During the ensuing disciplinary proceedings, Rauzan also admitted that he had failed to maintain necessary records for his client

trust account. According to the parties' stipulations, Rauzan has since corrected the account's deficiencies.

{¶ 8} Based on this conduct, the parties stipulated and the board found that Rauzan violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property, and to maintain certain records for the account and perform and retain a monthly reconciliation of the funds in the account).

*Wagner's and Rauzan's misconduct in the Foster matter*

{¶ 9} In May 2017, Richard and Cynthia Foster retained Wagner and Rauzan to represent them in a potential personal-injury matter. The Fosters agreed to pay respondents one-third of any recovery, minus a $5,000 retainer that the Fosters paid as an advancement toward litigation fees and expenses.

{¶ 10} On May 19, 2017, Wagner deposited the Fosters' $5,000 retainer into her client trust account. About five days later, she transferred $2,350 of the retainer to her law firm's operating account. At that time, however, she had not completed sufficient legal work on the Fosters' case for those funds to be considered earned.

{¶ 11} About ten days later, Wagner transferred $2,500 of the Fosters' remaining retainer to Rauzan's client trust account. But as noted above, Rauzan had been using his client trust account as his operating account and had drawn down the account, which essentially resulted in his taking his portion of the Fosters' retainer as an earned fee. And similar to Wagner, Rauzan had not completed sufficient work on the Fosters' case for those funds to be considered earned. Nor had Wagner or Rauzan incurred any litigation expenses. As a result of respondents' actions, within several weeks of receiving the Fosters' retainer, only $150 remained in Wagner's client trust account.

{¶ 12} According to the parties' stipulations, respondents eventually completed a significant amount of legal work for the Fosters. The Fosters,

however, terminated the representation. In response to the Fosters' demand for a refund of their retainer, respondents produced an invoice indicating that the legal fees for their work had exceeded $5,000. The board found that although the invoice accurately represented the amount of legal work respondents had completed for the Fosters, the invoice also indicated that respondents had performed only seven hours of work before Wagner transferred almost all of the Fosters' retainer out of her client trust account.

{¶ 13} The Fosters filed a grievance against Wagner and Rauzan. Although the panel ultimately dismissed some of relator's alleged rule violations resulting from the Fosters' grievance, the parties stipulated and the board found that respondents' mishandling of the Fosters' retainer violated Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred). Consequently, Wagner and Rauzan refunded the Fosters' entire retainer by each paying them $2,500.

{¶ 14} Wagner additionally admitted that when the Fosters retained her, she failed to notify them that she lacked malpractice insurance. The board therefore found that she also violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform a client in writing if the lawyer does not maintain professional-liability insurance).

{¶ 15} We agree with the board's findings of misconduct against Rauzan and Wagner.

### Rauzan's Sanction

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} The board found the presence of several mitigating factors in Rauzan's case. He has a clean disciplinary record, he lacked a dishonest or selfish

motive, he made restitution, he made full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings, he submitted evidence of his positive character, and other penalties had been imposed for some of his misconduct, including his criminal sentence and his surrender of his OPOTA certificate. *See* Gov.Bar R. V(13)(C)(1) through (6). The board also noted that Rauzan had accepted responsibility for his actions and showed genuine remorse.

{¶ 18} The board found only one aggravating factor—that Rauzan had committed multiple offenses. *See* Gov.Bar R. V(13)(B)(4).

{¶ 19} In fashioning a recommended sanction, the board first reviewed a number of cases in which we imposed a conditionally stayed six-month suspension for similar client-trust-account violations. *See, e.g.*, *Disciplinary Counsel v. Truax*, 148 Ohio St.3d 190, 2016-Ohio-7334, 69 N.E.3d 709 (conditionally stayed six-month suspension for an attorney who withdrew unearned fees from his client trust account for personal use and overdrew the account); *Erie-Huron Cty. Bar Assn. v. Zelvy*, 155 Ohio St.3d 609, 2018-Ohio-5095, 122 N.E.3d 1267 (conditionally stayed six-month suspension for an attorney who failed to deposit a client's funds into his client trust account, failed to properly account for those funds, and collected an excessive fee); *Wood Cty. Bar Assn. v. Driftmyer*, 155 Ohio St.3d 603, 2018-Ohio-5094, 122 N.E.3d 1262 (conditionally stayed six-month suspension for an attorney who failed to deposit an unearned fee into a client trust account, neglected the client's matter, and failed to provide the relator with requested information about the attorney's client trust account).

{¶ 20} Although the board found those cases instructive, it also noted that the facts here are similar to those in *Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 503, in which we imposed a conditionally stayed one-year suspension on an attorney whose misconduct included client-trust-account violations and a misdemeanor conviction. Specifically, the attorney in *McCord* failed to maintain a client trust account, failed to advise clients that he lacked

6

malpractice insurance, and failed to file income tax returns, resulting in a misdemeanor conviction. The balance of the mitigating and aggravating factors in *McCord* is also similar to the factors present in Rauzan's case. *See id.* at ¶ 14. However, unlike Rauzan, the attorney in *McCord* had a prior disciplinary record. *See id.*

{¶ 21} The board recommends that we impose a six-month suspension, stayed in its entirety on the condition that Rauzan engage in no further misconduct. Considering that Rauzan has corrected the deficiencies with his client trust account, the board concluded that he was not a threat to the public and therefore an actual suspension was unnecessary. The board also stressed that Rauzan had no prior disciplinary record, he had already suffered significant collateral sanctions for some of his misconduct, he was cooperative and remorseful at his disciplinary hearing, his misconduct did not harm the Fosters, and he repaid his portion of the Fosters' retainer, although arguably he was not required to do so. Indeed, the board concluded that although Rauzan and Wagner prematurely withdrew the Fosters' retainer from their client trust accounts, they ultimately earned those fees by providing a significant amount of legal services for the Fosters.

{¶ 22} "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19, citing *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. With that purpose in mind—and considering the balance of mitigating and aggravating factors and our precedent—we accept the board's recommendation.

### Wagner's Sanction

{¶ 23} The board did not find any aggravating factors in Wagner's case. In mitigation, the board noted that she has a clean disciplinary record, lacked a dishonest or selfish motive, made restitution, made full and free disclosures to the

board and had a cooperative attitude toward the disciplinary proceedings, and submitted evidence of her positive character and reputation. *See* Gov.Bar R. V(13)(C)(1) through (5). The board also noted that Wagner had accepted responsibility for her actions and showed genuine remorse and that her misconduct did not harm the Fosters. And similar to its reasoning in Rauzan's case, the board stressed that Wagner had eventually earned the legal fees that she prematurely withdrew from her client trust account.

{¶ 24} To support its recommended sanction, the board cited several cases in which we publicly reprimanded attorneys who committed misconduct of comparable severity. *See, e.g.*, *Butler Cty. Bar Assn. v. Matejkovic*, 121 Ohio St.3d 266, 2009-Ohio-776, 903 N.E.2d 633 (publicly reprimanding an attorney who failed to deposit two clients' unearned fees into his client trust account and failed to advise them that he lacked malpractice insurance); *Warren Cty. Bar Assn. v. Ernst*, 154 Ohio St.3d 131, 2018-Ohio-3900, 111 N.E.3d 1179 (publicly reprimanding an attorney who failed to deposit a client's retainer into his client trust account and neglected the client's matter); *Cincinnati Bar Assn. v. Bell*, 151 Ohio St.3d 609, 2017-Ohio-9088, 91 N.E.3d 747 (publicly reprimanding an attorney who failed to properly notify a client that he lacked malpractice insurance and settled the client's matters without the client's consent).

{¶ 25} Considering the significant number of mitigating factors present here—including Wagner's long career with no prior disciplinary violations—the lack of any aggravating factors, and the sanctions that we have imposed for similar misconduct, we agree that a public reprimand is the appropriate sanction in her case.

## Conclusion

{¶ 26} Andrew William Rauzan is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that

he engage in no further misconduct. If Rauzan fails to comply with the condition of the stay, the stay will be lifted and he will serve the full six-month suspension.

{¶ 27} Carol Clemente Wagner is hereby publicly reprimanded for the misconduct described above.

{¶ 28} Costs are taxed to Rauzan and Wagner.

Judgment accordingly.

KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., concur in part and dissent in part and would impose a conditionally stayed 12-month suspension on Rauzan, in accordance with *Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 81.

_____

David C. Comstock Jr. and J. Michael Thompson, Bar Counsel, for relator.

Montgomery Jonson, L.L.P., George D. Jonson, and Lisa M. Zaring, for respondent Andrew William Rauzan.

John B. Juhasz, for respondent Carol Clemente Wagner.

_____